The thrust of the majority opinion is that the trial judge abused his discretion in allowing the Tompkinses, in effect, to redeem the bond for title prior to its foreclosure, even though their predecessor in interest, Buck Marcum, had failed to make payments under the bond as agreed. I do not believe the trial judge, after hearing the evidence, abused the discretion the law gives to a trial judge when presented with an equitable claim.
The portion of the bond for title, pertinent to the issues presented, reads as follows:
 "The party of Second Part [Buck Marcum] agrees to pay promptly and strictly in accordance with the terms hereof each installment as it falls due; and if the Party of the Second Part shall fail to pay any one of said installments on the day the same falls due and such default shall continue for thirty days, time the essence of this contract, this contract shall at the option of the party of the First Part [J.G. Marcum] only, be terminated, and the Party of the First Part, his agents or assigns, may re-enter upon the said property and take possession thereof, and in that event, all rights and interests given to the Party of the Second Part by this contract shall cease and terminate, without any right in the Party of Second Part *Page 984 
of reclamation for any monies paid, or improvements made under this contract; but all monies so paid shall be and remain the property of the Party of the First Part and shall be held and retained by him as compensation for the rent or use and occupation of the said property, and the Party of Second Part agrees to peacefully surrender possession of the said premises. The party of First Part shall have the option to waive the forfeiture of the rights and interests of the Party of the Second Part in this contract on default in the payment of any of the said installments, but the waiver of such shall not be construed as a waiver of any other default occurring subsequent thereto. . . ."
Appellees quote extensively from an article at 3 Ala.L.Rev. 327, entitled "Bonds for Title in Alabama" in support of their argument. In that article, the commentator, J. Thaddeus Salmon, discussed the rights of a vendee under a bond for title. The rights of a vendee are critical here, because the Tompkinses are the successors to the vendee's interest. Salmon wrote:
 "Upon the execution of the bond the vendee is entitled to the immediate possession of the premises and the rents and profits therefrom. Failure to surrender possession will render the vendor liable to the vendee for the rents and profits of the land from which the vendor may deduct repairs and taxes but not improvements.
 "The vendee acquires an interest that he may convey or demise, and as land it is descendible to his heirs. His equity of redemption is in the form of a bill for specific performance in which he must aver that he is able, ready, and willing to pay the amount found due by the court. The mere passage of time after the purchase money becomes due will not operate to cut off the vendee's equity of redemption; and at the instigation of an action of ejectment at law by the vendor, the vendee may bring his suit for specific performance, get an injunction to stop the action at law, and require the vendor to accept the purchase money, to satisfy the debt, and to vest a clear and unclouded title in the vendee.
 "Since the vendor retains the legal title, and the interest which the vendee gains is not recognized by the law court, the vendee's interest is not subject to levy and execution, even though the entire purchase price has been paid; such a sale would convey no title to the purchaser.
* * * * * *
 "The question of when a vendor may declare a forfeiture is also of primary importance. In 2 Pomeroy's, Equity Jurisprudence, § 450 (5th ed., Symons, 1941), the following statement is made:
 "`It is well settled that where the agreement secured is simply one for the payment of money, a forfeiture either of land, chattels, securities, or money, incurred by its non-performance, will be set aside on behalf of the defaulting party, or relieved against in any other manner made necessary by the circumstances of the case, on payment of the debt, interest, and costs, if any have accrued, unless by his inequitable conduct he has debarred himself from the remedial right, or unless the remedy is prohibited, under the special circumstances of the case, by some other controlling doctrine of equity.'
 "It is axiomatic that equity looks upon forfeitures with disfavor. As the court said in Root v. Johnson
[99 Ala. 90, 10 So. 293], `Forfeitures are not favorites in equity, and unless the penalty is fairly proportionate to the damage suffered by the breach, relief will be granted when the court can give by way of compensation all that could be reasonably expected.' In Southern Inv. Co. v. Galloway where the vendee under a conditional sale contract for land had made payments according to the contract but failed to pay taxes, the court granted an injunction to restrain the vendor's action for unlawful detainer saying:
 "`If the court permits the contract to be forfeited, complainant would lose $300 cash payments, and $250 in improvements. The complainant would lose $550, *Page 985 
and defendant gain it, if the contract is forfeited. If the contract is enforced, complainant will lose nothing, and respondent will not be damaged, but receive the entire purchase money, interest, and taxes paid. This being true, it should be enforced and not forfeited.'"
In Southern Inv. Co. v. Galloway, 206 Ala. 445, 90 So. 300
(1921), the court examined a bond for title similar to the one in this case and found:
 "Time was made an essence of the contract. It provided for forfeiture of entire amounts paid in the event of failure of the performance of any part of it by complainant."
The court refused to declare a forfeiture and held as follows:
 "Has there been a forfeiture? If yea, should it be permitted in equity, if the defendant has not been and will not be injured thereby and the complainant would be? We think not. . . ."
 "If the court permits the contract to be forfeited, complainant would lose $300 cash payments, and $250 in improvements. The complainant would lose $550, and defendant gain it, if the contract is forfeited. If the contract is enforced, complainant will lose nothing, and respondent will not be damaged, but receive the entire purchase money, interest, and taxes paid. This being true, it should be enforced and not forfeited. Root v. Johnson, 99 Ala. 90, 1 So. 293; Franklin v. Long, 191 Ala. 310, 68 So. 149.
* * * * * *
 "The defendant has displayed a desire to get the property back and a determined effort to declare the contract forfeited. This it should not be permitted to do, as long as the complainant is ready, willing, and able to perform her part as shown by the allegations of the bill."
After reviewing the transcript, I agree with the trial court's finding "that the option granted to J.G. Marcum to terminate [the] contract was never exercised prior to the filing of the suit on February 23, 1978." Other findings of fact made by the trial judge are also supported by competent evidence. I think the majority, by refusing to indulge the traditional presumption accorded to findings of a trial judge, commits error; I would affirm that portion of the trial court's decree which finds that the option granted to J.G. Marcum to terminate the contract was not exercised prior to his death, and was not exercised after his death by anyone with legal capacity to exercise the option. I do not agree, however, that the appellees, as successors in title to the vendee, Buck Marcum, could prevent a forfeiture and obtain a deed to the subject property by the payment of the remaining $900 due under the agreement. I think the trial court properly applied equitable principles in refusing to permit a forfeiture, but I would agree that the trial court erred, in this case, in not assessing interest and costs, if any have accrued, on the $900 from the date the $900 was due. In Barry v. Welch, 248 Ala. 167,26 So.2d 872 (1946), a case involving a mortgage, this Court set out an equitable principle which I would apply here, even though this case involves a bond for title. In Barry v. Welch, this Court opined:
 "If the forfeiture be inserted in the contract merely as security for the payment of money, equity regarding the security of such payment as the real purpose of the contract may relieve the debtor from its consequences if the creditors' injuries can be adequately redressed (2 Pom.Eq.Jur., 5th ed., § 381), and unless the debtor's defalcation has been willful or intentional. `It is well settled that where the agreement secured is simply one for the payment of money, a forfeiture either of land, chattels, securities, or money, incurred by its nonperformance, will be set aside on behalf of the defaulting party, or relieved against in any other manner made necessary by the circumstances of the case, on payment of the debt, interest, and costs, if any have accrued, unless by his inequitable conduct he has debarred himself from the remedial right, or unless the remedy is prohibited, under the special circumstances of the case, by some other controlling doctrine *Page 986 
of equity.' Id., Pom.Eq.Jur. § 450."
(Emphasis added.)
I disagree with the majority in its treatment of the bond for title issue.
JONES and SHORES, JJ., concur in the result.